(173 App. Div. 463)

### FITZGIBBONS BOILER CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.     June 2, 1916.)

1. FIXTURES ☞9—MACHINERY SOLD TO SUBCONTRACTOR.

Where boilers were sold to subcontractors under conditional contracts of sale, which expressly referred to and indicated notice to plaintiff of the general contract with the city for the purpose of fixing terms of payment and character of boiler to be installed, and were permanently installed and substantially paid for by the city without knowledge of the claim that they were sold to the subcontractors under conditional bills of sale, as between the plaintiff and the city, the boilers became a part of the realty.

[Ed. Note.—For other cases, see Fixtures, Dec. Dig. ☞9.]

2. SALES ☞473(1)—CONDITIONAL SALES—INNOCENT PURCHASER—NOTICE.

Notices of the plaintiff's claim, some served after final payment had been made to the general contractor, and others on department heads who had nothing to do with the contract in question, the plaintiff having notice of the provision in the general contract that, upon receipt of notice therein specified, the city would retain money to pay claims after their adjudication in actions to foreclose liens, did not prevent the city being a purchaser in good faith.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1383, 1385–1390; Dec. Dig. ☞473(1).]

Appeal from Trial Term, New York County.

Action by the Fitzgibbons Boiler Company against the City of New York. Judgment for defendant upon directed verdict, and plaintiff appeals. Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Albert H. Gleason, of New York City, for appellant.
Charles J. Nehrbas, of New York City, for respondent.

DAVIS, J. This action is brought to recover possession of seven boilers installed on city property, or, if not the possession, the balance

due on their purchase price. Three causes of action are alleged in the complaint. The first refers to three 100 horse power boilers, sold and delivered by plaintiff to the subcontractor Rossman & Bracken Company on April 25, 1904, and by that company installed in the Gouverneur Hospital pursuant to its agreement with John R. Sheehan & Co., the general contractor with the city; the second relates to two 125 horse power boilers, sold and delivered by plaintiff to the subcontractor Crocker & Andrews in December, 1902, and by Crocker & Andrews placed in the Allen Street Public Bath under its agreement with Murphy Bros., who were the general contractors with the city; and the third cause of action relates to two other 125 horse power boilers, which were sold and delivered by the plaintiff to the same subcontractor, Crocker & Andrews, and by it placed in the East 109th Street Bath under its contract with Murphy Bros., the general contractor. The general contractors named had contracts with the city for furnishing work and materials in repairing and altering the hospital and baths referred to, and that part of the general contract providing for the furnishing and installing of the boilers was sublet to the subcontractors. The subcontractors failed to pay the full purchase price of these boilers, and the plaintiff now seeks to recover from the city the balance due from the subcontractors to the plaintiff. At the close of the case both sides moved for a direction of a verdict, and the court directed a verdict in favor of the defendant. The plaintiff appeals from the judgment entered upon this verdict.

We think the judgment is right, and should be affirmed. All of these boilers were sold to the subcontractors under conditional contracts of sale containing the following provision:

"The title to any boiler furnished shall not pass from the company to the purchaser until it is fully paid for. * * * If default is made in the payment of any such notes, or in the payment of any sums falling due under this contract, the company may enter the premises where the boilers may be situated and remove the same as its own property, and the purchaser agrees to provide at its own expense the exit necessary to effect such removal."

These contracts of sale were executed in duplicate, and one duplicate was delivered to the subcontractor, in compliance with section 115 of chapter 418, Laws of 1897, as amended by chapter 354, Laws of 1898. The plaintiff therefore claims that title to the boilers still remains in it, and that it has the right to immediate possession thereof, notwithstanding the fact that they have been installed by the subcontractor on city property. We do not agree with this contention of the plaintiff.

[1] It is quite apparent from the evidence that the city had no knowledge whatever of the conditional character of the sale to the subcontractors until long after the boilers were installed on the city's property, and the city had made substantial payments for them to the general contractor. There is nothing in the case from which we can infer that the city permitted the boilers to be set up with the understanding on its part that title was to remain in the plaintiff until they were paid for. Then, again, the boilers were so affixed to the buildings that they became an integral part thereof, thus changing their character as personal property and making them a part of the

realty.  And obviously the plaintiff knew, and inferentially he intended, that such a result would follow the installation of the boilers, since the conditional agreements of sale expressly refer to the general contract with the city for the purpose of fixing the terms of payment and the character of the boilers to be furnished.  The conclusion necessarily follows that, as between the plaintiff and the city, the boilers in question became and now remain a part of the realty.

We have here a case in principle quite like the case of Jermyn v. Hunter, 93 App. Div. 175, 87 N. Y. Supp. 546.  There the action was brought to recover possession of a steam boiler which had been sold conditionally to Coons & Wilson, a firm of contractors, who were under contract to install the heating apparatus in the owner's building.  The real property wherein the boiler was installed was sold to the defendant under a judgment of mortgage foreclosure and sale.  The property was bought in by the defendant, in ignorance of the conditional sale of the boiler.  Plaintiff recovered judgment, which was reversed by this court.  The court held that under the evidence the boiler as installed became real property, and that the vendor could not recover against the purchaser of the premises, in the absence of evidence showing that the owner knew that the boiler had been sold conditionally. In the course of the opinion the court say (93 App. Div. at page 178, 87 N. Y. Supp. at page 548):

"In the absence of any agreement upon the part of the owner that the articles should remain personal property, or of such notice to him as would authorize an inference of his acquiescence in their remaining personal property, they become part of the realty. It is not contended that the owner had any notice of the conditional sale which was effected by the agreement between the plaintiff and Coons & Wilson, or that he in any wise assented to the title to the property remaining in the plaintiff after its installation in the building. The contract with the owner provided for the installation of the heating apparatus for the purpose of permanent use in connection with the building, and of this fact the plaintiff had notice. There was, therefore, nothing in the case upon which to predicate any assent of the owner that the permanent accession to the realty should continue to be and remain personal property."

And at pages 179, 180 of 93 App. Div., at page 549 of 87 N. Y. Supp.:

"If vendors of personal property seek to make a conditional sale, they should be required to deal with the owner of the property, and not alone with the contractor without notice to the owner. Unless they do, there is no justification for imposing an incumbrance upon the building without the owner's knowledge or consent."

In the case before us, as stated above, the boilers were fully installed and substantially paid for by the city in ignorance of the claim that they had been sold to the subcontractor under conditional bills of sale.  For this reason the plaintiff should not recover against the city.  It may seem harsh that the plaintiff must lose a substantial part of the purchase price of these boilers, but it would be even more unjust to require the city to pay, when the boilers were installed without notice of the claim of the plaintiff, and when the city has already paid for them in full.  Moreover the plaintiff could have protected itself against the subcontractor's default by taking advantage of the lien

law, and by filing proper notices of its claim with the president of the borough and the comptroller of the city in the case of the baths, and with the board of trustees of Bellevue and Allied Hospitals and the comptroller in the case of the hospital, as provided for in the city's contracts with the general contractor, with the provisions of which the plaintiff presumably was well acquainted, since it had made those contracts a part of its agreement with the subcontractor. But it chose rather to rely upon the effect of certain notices of its claim which were served upon various department heads, some of whom had nothing to do with the business in question.

It is not claimed by plaintiff that these notices created any liens. Matter of Sheehan & Co., 135 App. Div. 94, 120 N. Y. Supp. 153. But it is claimed that the city paid the contractor a sum largely in excess of the amount due to the plaintiff after it had received notice of plaintiff's claim, and that therefore the city is not a purchaser in good faith. The evidence fails to sustain this contention, as will appear from an examination of the circumstances under which these notices were served. For instance, in the case of the boilers placed on the Gouverneur Hospital premises, the notice was served on the borough president, who had nothing to do with that contract and did not represent the city. This contract was made with the board of trustees of Bellevue and Allied Hospitals—evidently the proper body to be notified of plaintiff's claim. In the case of the boilers furnished for the Allen Street Baths and the East 109th Street Baths, although notices were served upon the borough president, none was served upon the comptroller until after final payment had been made to the contractor.

[2] The evidence strongly suggests that by its earlier notices the plaintiff sought to secure itself under the provisions of the lien law, and, finding them ineffective for that purpose, it sought to make them available to show that the city was not a purchaser in good faith. In our opinion, they cannot have that effect. The city, with its large and complex organization for carrying on the work of the municipality, ought not to be subjected to liability upon notices served as these were.

Moreover, the city, with due regard to the possible claims of those supplying materials for the buildings, provided in its agreement with the contractor that upon receipt of the notice therein specified it would retain sufficient of the money coming to the contractor to pay the claims after their adjudication in actions to foreclose the liens. As stated above, the plaintiff must have known of this provision, as the city's contract is in part incorporated in the conditional agreements. Instead of availing itself of the means of securing itself indicated in the city's contract, it preferred to rely upon other notices, insufficient, as we think, to place the city in fault as a purchaser of the boilers in bad faith, when it is clear that the boilers were fully installed and substantially paid for by the city in absolute ignorance of plaintiff's conditional contract. The judgment is affirmed, with costs.

Judgment and order affirmed, with costs. All concur.